(No. 66243.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MUANG K. SAECHAO, Appellee.

*Opinion filed September 20, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Marc Bernabei, State's Attorney, of Princeton (Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Peter A. Carusona, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, and Susan Brody, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a bench trial in the circuit court of Bureau County, the defendant, Muang K. Saechao, was found guilty of unlawful possession of less than 200 grams of a

controlled substance. The trial judge sentenced the defendant to a one-year period of probation and ordered her to pay costs and a fine totaling $3,000. The appellate court reversed the defendant's conviction and remanded the cause for a new trial, holding that the trial judge had erred in denying the defendant's motion to quash her arrest and suppress evidence. (161 Ill. App. 3d 1163 (unpublished order under Supreme Court Rule 23).) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

On April 25, 1985, officers of the Bureau County sheriff's office executed a search warrant of the defendant's residence in Wyanet, Illinois. The officers found a package containing opium, and the defendant was subsequently charged with illegal possession of a controlled substance. Prior to trial, the defendant moved to quash her arrest and suppress evidence, arguing, among other things, that the officers had failed to provide the necessary notice of their authority and purpose before they entered the residence. Following an evidentiary hearing, the trial judge denied the defendant's motion, ruling that the officers had made a valid entry of the premises. The defendant was later found guilty of a related offense. On appeal, the defendant's sole challenge to the trial proceedings concerned the ruling on the motion to quash her arrest and suppress evidence. The appellate court agreed with the defendant that the officers' entry of the residence was invalid, and the court therefore reversed the judgment and remanded the cause for further proceedings.

The following evidence was presented at the suppression hearing. At the time in question, the defendant was living in Wyanet with nine other persons; she had moved to the United States from Laos some four years earlier.

On the morning of April 25, 1985, the defendant went to the Wyanet post office to pick up the mail for the household, as was her daily custom. That day she found a delivery notice in her post office box. The defendant gave the notice to a postal employee, who produced a package addressed to one Seng Wang Lee at the same house number and street as the defendant. The defendant explained that although she did not know the person and was not familiar with the name, she signed for the package because she recognized the street address as her own. The defendant took the package home and opened it, and found that it contained what appeared to be cans of fish. She did not open any of the cans but put the entire parcel under her cousin's bed in an upstairs bedroom. The defendant testified that later that morning, as she was sitting in the living room, she heard a loud bang and the front door opened. Four police officers then entered the living room. The defendant and her mother, who was also present in the house, were directed at gunpoint to lie on the floor, and they were eventually handcuffed and taken from the residence.

Sergeant John Shofner of the Bureau County sheriff's office testified in the State's behalf at the suppression hearing. Sergeant Shofner explained that he had been notified by the Drug Enforcement Administration and the United States Customs Service in Los Angeles of the seizure of a package containing opium that was addressed to a resident of Wyanet. Shofner learned that an unspecified number of other packages being sent to that address had been seized in customs, and he was told that this particular parcel would be forwarded to him and that he could then pursue the matter under State law. The Bureau County sheriff's office received the package on April 24, 1985. It contained 10 cans, of the same size and shape as those in which tuna is commonly sold. Additional tests performed at that time confirmed

the earlier finding by Federal authorities that the cans contained opium.

The parcel was taken to the Wyanet post office, and a delivery notice. was left in the defendant's post office box. The defendant's residence and the post office were placed under surveillance on April 25. Shofner testified that around 9:30 that morning, officers saw the defendant leave her residence and walk to the post office, which was located next door to the defendant's house. The defendant removed the note from her post office box, obtained the parcel in question from a postal employee, and returned home with it.

A search warrant was issued an hour later. Half a dozen officers went to the defendant's residence, stationing themselves at the front and back doors of the house. Shofner testified that he knocked on the front door three times and announced in a loud voice that he was from the sheriff's department; Shofner said that the force of his knocks caused the door, which was unlatched, to swing open. The officers did not hear anything or see anyone. Shofner said that the officers remained at the threshold for 5 to 10 seconds and then entered the residence. The defendant was found in the living room. After the defendant and her mother were escorted from the house, the officers conducted a canine-assisted search of the premises. The package containing the opium was recovered under a bed in a locked, second-floor bedroom; although the box had been opened, all 10 cans were still present.

Shofner testified that all the officers who took part in executing the search warrant were armed. He explained that the officers had been warned by the Drug Enforcement Administration of widespread violence and destruction of evidence in cases involving drug parcels from overseas. Shofner said that, after the front door opened, the officers therefore entered the premises quickly, with

their weapons drawn, to protect themselves and to prevent the disposal of the contraband. Shofner also noted that the officers had learned that about 10 persons were living at the address.

The trial judge denied the defendant's motion to quash her arrest and suppress evidence. The trial judge ruled both that the door of the defendant's residence was open and that the officers, in executing the search warrant, made a sufficient announcement of their authority before entering the premises. In a letter to counsel stating his ruling, the trial judge said, "The court finds that the door was open and that the officer executing the search warrant did announce." With respect to the finding that the door was "open," it appears, from a statement later made by the trial judge at the hearing on the defendant's motion for reconsideration, that the judge used the term "open" to signify that the door was unlatched when the officers arrived to execute the search warrant. The trial judge denied the motion for reconsideration.

The State's Attorney's office and the defendant subsequently reached an agreement concerning the disposition of the case. In accordance with the parties' agreement, the State nol-prossed the original charge, unlawful possession of more than 200 grams of a substance containing opium, a Class 1 felony (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(a)(11)), and the defendant was found guilty in a stipulated bench trial of a less serious offense, possession of less than 200 grams of a substance containing opium, a Class 4 felony (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). Also by agreement, the defendant was sentenced as a first offender to one year's probation under section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1410) and was ordered to pay, as costs and a fine, a total of $3,000.

The appellate court, in an unpublished order, reversed the defendant's conviction and remanded the cause for a new trial, agreeing with the defendant that the trial judge had erred in denying the motion to quash arrest and suppress evidence. (161 Ill. App. 3d 1163.) In reaching that conclusion the appellate court relied primarily on its recent decision in *People v. Marinez* (1987), 160 Ill. App. 3d 349, which suppressed the results of a search because law enforcement officers in that case had failed to knock on the door of the residence and announce their authority and purpose before entering the premises to execute a valid search warrant. In the present case, the appellate court held that the officers did not comply with the knock-and-announce rule because their entry of the residence was simultaneous with their efforts to provide notice to the occupants. The court also ruled that there were no exigent circumstances warranting the officers' failure to satisfy the rule. Finally, the appellate court rejected the trial judge's finding that the front door of the defendant's residence was "open," citing Sergeant Shofner's testimony that the door of the residence swung open after he began knocking on it. The appellate court apparently understood the trial judge to mean that the door was ajar when the officers arrived.

The State makes several arguments in support of the trial judge's decision denying the defendant's motion to quash arrest and suppress evidence. The State contends that the officers in the present case substantially complied with the requirements of the knock-and-announce rule. In the alternative, the State argues that the rule is not a constitutional requirement and that the failure of law enforcement officers to observe its strictures should not in the present case vitiate the execution of the search warrant. Finally, the State argues that the defendant's arrest and the seizure of the contraband

were constitutional under the independent-source exception.

The history of the knock-and-announce rule can be traced to the early seventeenth century, when it was first held that a sheriff must state his presence and purpose prior to the execution of a civil writ. (See 2 W. La-Fave, Search & Seizure 270 (2d ed. 1987), citing *Semayne's Case* (K.B. 1603), 5 Coke 91, 77 Eng. Rep. 194; see also Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 U. Pa. L. Rev. 499 (1964).) Although *Semayne's Case* involved a civil action, the concept of notice prior to entry into an individual's home was soon adopted in criminal cases involving the execution of search warrants. (2 W. LaFave, at 270-71.) Widely followed in early American decisions, the knock-and-announce rule has become " 'deeply rooted in our heritage.' " *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 163, quoting *Miller v. United States* (1958), 357 U.S. 301, 313, 2 L. Ed. 2d 1332, 1340, 78 S. Ct. 1190, 1198; see also Blakey, 112 U. Pa. L. Rev. at 504.

The United States Supreme Court has not decided whether compliance with some form of a knock-and-announce rule in the execution of a search warrant is constitutionally mandated. Supreme Court decisions on the subject have involved only compliance with knock-and-announce statutes (see *Sabbath v. United States* (1968), 391 U.S. 585, 20 L. Ed. 2d 828, 88 S. Ct. 1755 (Federal statute); *Miller v. United States* (1958), 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (Federal statute); see also *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623), which many jurisdictions, including the Federal government, have adopted, codifying the common law knock-and-announce requirements (2 W. LaFave, at 271). Illinois, however, does not have such a statute. (See *People v. Ouellette* (1979), 78 Ill. 2d

511, 516; *People v. Conner* (1979), 78 Ill. 2d 525, 529; *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 162.) Section 108—8 of the Code of Criminal Procedure of 1963 provides:

> "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." (Ill. Rev. Stat. 1985, ch. 38, par. 108—8.)

To the same effect is section 107—5(d) of the Code, which governs arrests. Ill. Rev. Stat. 1985, ch. 38, par. 107—5(d).

This court has previously stated that although the failure of law enforcement officers to announce their authority and purpose prior to entering a dwelling is not necessarily a constitutional violation, the presence or absence of such an announcement is an important consideration in determining "whether subsequent entry to arrest or search is constitutionally reasonable." (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166.) In *Wolgemuth*, law enforcement officers, in executing a valid arrest warrant, knocked on the defendant's door for lengthy periods of time but made no announcement of their authority and purpose before they entered the premises with the aid of a passkey. The court held that the entry was reasonable, in light of the separate 10-minute and 5-minute periods of knocking conducted by the officers. In *People v. Ouellette* (1979), 78 Ill. 2d 511, law enforcement officers in each of two consolidated cases failed to knock and to announce their authority and purpose prior to entering the defendants' residences to execute valid search warrants. The court stated that exigent circumstances may, in a proper case, excuse the failure of officers to knock and announce before entering a dwelling to execute a warrant. The court held, however, that such circumstances were not present in either of the two consolidated cases, and, because the authorities had not

made a knock and announce, the court affirmed orders suppressing the evidence seized in the two cases. In *People v. Conner* (1979), 78 Ill. 2d 525, the court held that the circumstances present in that case excused the failure of law enforcement officers to knock and announce before entering the defendant's residence to execute a valid search warrant. There, the officers had advance knowledge of the elaborate security devices installed by the defendant on the premises, of the defendant's preparations for the quick destruction of evidence, and of the presence of dangerous guard dogs on the property.

The defendant makes no challenge to the validity of the search warrant, and the sole question before us concerns the manner in which the officers entered the premises to execute the warrant. As *Wolgemuth, Ouellette,* and *Conner* demonstrate, this court has relied on the criteria expressed in the knock-and-announce rule in assessing the reasonableness of the entry by law enforcement authorities to execute a valid search or arrest warrant. From the evidence presented at the suppression hearing in the present case, it appears that the officers knocked on the front door of the defendant's residence and announced their authority, but not their purpose, and that they waited a short period of time before entering the dwelling. We hold that the knock-and-announce criteria were substantially satisfied in the present case and that the search warrant was properly executed.

At the suppression hearing, Sergeant Shofner testified that after procuring the search warrant the officers approached both the front and rear doors of the residence. Shofner stated that as he knocked on the door, he loudly announced that he was from the sheriff's office and requested admittance. Although Shofner did not announce his purpose, it cannot be said that the residents were not made aware of the law enforcement officers' presence.

The amount of time allowed to lapse between announcement and entry is also relevant in determining the reasonableness of officers' conduct in executing a search warrant. As this court has previously noted, one important purpose served by the knock-and-announce rule is the protection of individuals' privacy interests. (*Wolgemuth*, 69 Ill. 2d at 166.) To that end, a person should be afforded sufficient opportunity to respond to authority before a forcible entry is made. There are no rigid rules, however, for determining whether officers have allowed a sufficient period of time to elapse before entering a building to execute a search warrant. (See *People v. Trask* (1988), 167 Ill. App. 3d 694, 704; *People v. Boykin* (1978), 65 Ill. App. 3d 738, 741.) In this case, the search was being conducted at 10:30 in the morning, and therefore it was likely that any residents who were present at the time would be up and about; the officers knew, of course, that the defendant had already left and returned to the house that morning.

The appellate court concluded that the officers entered the defendant's residence at the same time they announced their presence. Although we do not decide here whether in all cases some time must pass between an officer's announcement and entry, we do not believe that the appellate court's characterization of the officers' entry in this case as simultaneous with their announcement is supported by the record. Contrary to the appellate court's finding, Sergeant Shofner testified that 5 to 10 seconds elapsed between the announcement and the entry. During that time the officers stood at the threshold of the residence, and they received no response from the occupants. Once the unlatched door swung open— and we note that there was no evidence of damage to the door—the officers were in a vulnerable position. We consider that the period of time that elapsed before the officers made their entry was sufficient here.

Our evaluation of the circumstances in this case leads us to conclude that the officers acted in a constitutionally reasonable manner in executing the search warrant. Shofner and three other law enforcement officers went to the front door of the defendant's house; two officers were directed to the rear of the premises. Shofner knocked on the front door, and the force of his knocks caused the unlatched door to swing open. At the same time, Shofner loudly announced that he was from the sheriff's department. Once the door was open, Shofner and the other officers stood at the threshold for a period of 5 to 10 seconds. During this time, there was no response from within the house. The officers then entered the house without further delay, having been warned generally of the possibility of violence and the destruction of evidence. We do not believe that the officers' conduct was rendered unreasonable either by the failure to make an announcement of purpose, in addition to an announcement of authority, or by the 5- to 10-second span of time between the initial announcement and the entry.

It was the defendant's burden to establish, in support of her motion to quash arrest and suppress evidence, that the search warrant was executed in an unlawful manner. (Ill. Rev. Stat. 1985, ch. 38, par. 114—12(b); *People v. Neal* (1985), 109 Ill. 2d 216, 218; *People v. Berg* (1977), 67 Ill. 2d 65, 68.) The trial judge's ruling on the motion is not to be reversed unless it is manifestly erroneous. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212; *People v. Conner* (1979), 78 Ill. 2d 525, 532.) Based on our review of the circumstances surrounding the execution of the warrant, we find that the determination of the trial court, in denying defendant's motion to suppress, was not manifestly erroneous. In light of our holding in this case, we have no occasion to consider the State's remaining arguments, including its contention

that compliance with the knock-and-announce criteria is not required by the Constitution.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Bureau County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*