THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY CONDON, Defendant-Appellant.

Second District   No. 2—88—1069

Opinion filed March 27, 1990.—Rehearing denied April 27, 1990.

GEIGER, J., dissenting.

George Patrick Lynch, Ltd., of Chicago (George P. Lynch, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

818

Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Timothy Condon, was indicted in the circuit court of Du Page County on one count of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2), one count of unlawful delivery of more than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), one count of unlawful possession with the intent to deliver more than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), one count of unlawful possession with the intent to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)), one count of conspiracy to deliver 15 grams or more of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1405(a)), one count of narcotics racketeering (Ill. Rev. Stat. 1987, ch. 56½, par. 1654(a)), and one count of unlawful delivery of 30 grams or more of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)). Following a bench trial, defendant was found guilty of the first four counts and not guilty of the latter three. He was sentenced to 12 years' imprisonment on the armed violence conviction, 12 years' imprisonment on the possession with intent to deliver cocaine conviction, 12 years on the delivery of cocaine conviction, and 3 years on the possession with intent to deliver marijuana conviction, with all sentences to run concurrently.

The following issues are raised on appeal: (1) whether the failure of the police to knock and announce prior to executing the search warrant for defendant's residence renders the search of defendant's residence unreasonable; (2) whether defendant was proved guilty beyond a reasonable doubt of the two counts charging possession with intent to deliver cocaine and possession with intent to deliver marijuana; (3) whether defendant was proved guilty beyond a reasonable doubt of armed violence; (4) whether defendant was proved guilty beyond a reasonable doubt of unlawful delivery of more than 15 grams of a substance containing cocaine; (5) whether the trial court erred in denying defendant a *Franks* hearing; (6) whether the trial court erred in denying defendant's motion to dismiss and his motion in arrest of judgment as to the armed violence count; and (7) whether the trial court erred in admitting testimony of unrelated criminal conduct.

On November 6, 1987, at approximately 6:45 p.m., agents of the Du Page County Metropolitan Enforcement Group (DuMEG) executed

a search warrant on a residence located at 1 N. 535 Swift Road, Lombard, Illinois. Defendant resided at that address, but the home was owned by defendant's brother, Bernard J. Condon. Bernard Condon was a codefendant with defendant, but was a fugitive at the time of defendant's trial.

According to the complaint for search warrant, prepared by DuMEG agent Barbara Durnil, Agent Charles Dvorak was informed by Roger Trenton that Trenton had purchased cocaine on several occasions from Bernard Condon and defendant at the 1 N. 535 Swift Road residence. Trenton also told Dvorak that defendant and his brother would distribute cocaine at the residence between 6 p.m. and 9 p.m. According to Trenton, there were two closed circuit television cameras and a police scanner to monitor traffic near the residence and there were several weapons located in the residence to protect the cocaine and currency.

The complaint further states that on June 10, 1987, Dvorak completed a purchase of cocaine by sending Trenton into the residence, where he purchased cocaine from defendant. Trenton told Dvorak that the sale occurred in the second-floor office of the residence. According to Dvorak, while at defendant's residence on June 10, 1987, he observed two surveillance cameras, one at the front door and one at the rear door. Dvorak also observed a police radio scanner on the kitchen counter as he was sitting in his vehicle in the driveway.

The complaint for search warrant also stated that an individual named Ben Adams, who sold cocaine to Agent Durnil, had indicated that his source was located at 1 N. 535 Swift Road, defendant's residence.

The defendant's evidence, adduced at the hearing on defendant's motion to suppress evidence, indicates that defendant was in the kitchen of the residence at the time the police executed the warrant. According to defendant, the police did not knock, use the doorbell, or announce themselves. Defendant heard two loud bangs, and at least a dozen police officers, whom defendant described as SWAT officers, forcibly entered the house.

Defendant admitted in cross-examination that there is a surveillance camera at both the front and back doors of the house and a monitor in the kitchen capable of switching from one camera to the other. According to defendant, the surveillance cameras were on at the time the police entered his home, but it was too dark to see anything. Defendant further admitted that he had 13 guns in the house, including a loaded revolver in his bedroom. Most of the weapons were shotguns that defendant said he used for hunting.

The State only offered the complaint for search warrant at the suppression hearing. The trial court denied defendant's motion to suppress, finding that there were exigent circumstances which justified the officers' failure to knock and announce prior to entering the home.

The State did not contend below nor does it on appeal that the police officers knocked and announced in this case. The evidence at the suppression hearing and the trial establishes that they did not knock and announce, but, rather, gained entrance by using a battering ram against the front door.

At trial, Officer Michael Sullivan testified that on November 6, 1987, while conducting surveillance on the Condon residence, he observed Agent Durnil and Ben Adams arrive at the residence. Adams exited the vehicle, entered the residence, exited the residence, and reentered Durnil's vehicle. Durnil then drove away, and Sullivan was advised by radio shortly thereafter that Adams was arrested with cocaine in his possession. He then observed the team of officers execute the search warrant of defendant's premises. They wore bulletproof vests, had special weapons, and used a ram and access equipment.

Ben Adams testified that he went with Durnil to the house on November 6, 1987, to purchase an ounce of cocaine. He met defendant and gave him $1,900 in prerecorded money. Defendant counted the money, and his brother, Bernard Condon, went upstairs. About 5 to 10 minutes later, defendant's brother returned to the kitchen and handed what Adams assumed to be an ounce of cocaine to defendant. Defendant in turn placed the substance on the counter and said "[t]here you go." The substance was later determined by laboratory analysis to contain cocaine. Defendant placed the $1,900 in his front pocket after counting it. At the time of defendant's arrest in the kitchen, the prerecorded money was found on the floor near defendant. A search of the house revealed cocaine and marijuana in the second-floor office.

Joseph Nebren, testifying for the State, stated that on at least one occasion in 1987 he had purchased a white, powdery substance he believed to be cocaine from defendant and that the transaction occurred in an office located on the second floor of the Condon residence. On cross-examination, Nebren admitted lying to the grand jury when he testified that he had never purchased cocaine from defendant and that he was now testifying pursuant to a grant of immunity.

Karen Schaeffer, defendant's fiancee, testified for defendant that

she lived with defendant at 1 N. 535 Swift Road for about three months and that Bernard Condon owned the house. According to Schaeffer, there are four bedrooms upstairs, one of which was Bernard Condon's office, and that the office was kept locked all the time. Bernard Condon had the only key to the door and to the lockbox which contained the cocaine. According to Schaeffer, defendant did not have a key to either the office or the lockbox. She never saw defendant open the office door or the lockbox, and Bernard Condon was the only person to open the office door or open the lockbox. Defendant did not testify or offer any other witnesses.

We first address defendant's contention that the unannounced entry by the law enforcement officers was constitutionally unreasonable under the circumstances. Although the failure of law enforcement officers to announce their authority and purpose prior to entering a dwelling is not a *per se* constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether a subsequent entry to arrest or search is constitutionally reasonable. (*People v. Saechao* (1989), 129 Ill. 2d 522, 531, 544 N.E.2d 745; *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 156, 370 N.E.2d 1067.) The purpose of the knock-and-announce rule is to notify the person inside of the presence of the police and of the impending intrusion, give that person time to respond, avoid violence and protect privacy as much as possible. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 518, 401 N.E.2d 507.) Exigent circumstances may, in a proper case, excuse the failure of officers to knock and announce before entering a dwelling to execute a warrant. (*Saechao*, 129 Ill. 2d at 531, 544 N.E.2d at 749; *Ouellette*, 78 Ill. 2d at 518, 401 N.E.2d at 510.) Exigent circumstances may encompass such considerations as danger to the police executing the warrant, the uselessness of the announcement, or the ease with which the evidence may be destroyed. *Ouellette*, 78 Ill. 2d at 518-19, 401 N.E.2d at 510.

The State contends that there were exigent circumstances here sufficient to excuse the law enforcement officers' failure to knock and announce. Specifically, it argues that the presence of cocaine, the existence of surveillance cameras and a police radio scanner, the presence of weapons in the house, and the fact that defendant's brother was arrested in 1985 with cocaine and a loaded .22 caliber semiautomatic pistol in his possession constitute exigent circumstances justifying the failure to knock and announce. The State relied solely on the statements in the complaint for search warrant to show exigent circumstances and did not present any testimony by the law

enforcement officers to support their failure to knock and announce their presence.

■■ Existence of narcotics alone is not an exigent circumstance, but rather the police must have particular reasons to believe reasonably in a particular case that evidence will be destroyed. (*Ouellette*, 78 Ill. 2d at 520, 401 N.E.2d at 511; *People v. Clark* (1986), 144 Ill. App. 3d 7, 11, 494 N.E.2d 166.) Here, there is no evidence that the cocaine was situated so as to be readily disposed of, and the State has not contended otherwise. Thus, the mere fact that cocaine was the object of the search does not constitute an exigent circumstance.

■■ The informant's general statement that there were several weapons in the house to protect the cocaine and currency does not comprise an exigent circumstance either. The existence of a weapon should excuse the knock-and-announce rule only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. (*Ouellette*, 78 Ill. 2d at 520, 401 N.E.2d at 511.) The presence of weapons alone does not create an exigent circumstance. (*People v. Marinez* (1987), 160 Ill. App. 3d 349, 352, 513 N.E.2d 607.) Furthermore, the informant's statement that the weapons were to protect cocaine and currency is conclusory at best. It does not identify the type of weapons or any facts which support the conclusion that the weapons located in the house would be used against law enforcement officers for the purpose of protecting cocaine and currency. There are no references to any statements by defendant or any other occupant of the house indicating the purpose of the weapons or any reference to other facts which would support that conclusion. Accordingly, the bare statement that there were weapons in the house to protect cocaine and currency does not constitute an exigent circumstance. In so holding, we note the lack of evidence as to whether the weapons were loaded, what type of weapons were involved, the ready accessibility of the weapons, the likelihood that any of the weapons would be used by the occupants of the home against police, or that any of the occupants had ever used the guns against law enforcement officers or anyone else. Moreover, giving notice of the presence of the police seems compelling in the face of startling someone with a weapon, absent evidence that the weapon will be used against the police. *Ouellette*, 78 Ill. 2d at 520, 401 N.E.2d at 511.

■■ The police were also aware that approximately two years earlier defendant's brother, the owner of the house, had been arrested for possession of cocaine and had a loaded .22 caliber semiautomatic pistol in his possession at the time of his arrest. Although

such a fact is particularly relevant to the question of the necessity of knocking and announcing, it is insufficient to justify the unannounced entry in this case. Again, the knock-and-announce rule should only be excused where the officers reasonably believe that a weapon will be used against them if they do announce. *Ouellette*, 78 Ill. 2d at 520, 401 N.E.2d at 511; *People v. Hardin* (1989), 179 Ill. App. 3d 1072, 1076-77, 535 N.E.2d 1044.

In this case, defendant's brother had a loaded semiautomatic pistol in his possession two years prior to execution of the warrant. There is no evidence that he used, attempted to use, or was inclined to use the pistol against police at the time he was arrested (see *Hardin*, 179 Ill. App. 3d at 1077, 535 N.E.2d at 1046 (where defendant told officers at the time of his prior arrest that they were fortunate that he did not get to his gun)), that he had violent propensities, that he had ever used force against a police officer, or that he had ever been convicted of a violent crime involving the use of weapons. Nor is there any evidence that he would be carrying or have ready access to a loaded weapon at the time the warrant was to be executed, or that he was likely to use the weapon against the police. The mere fact that he had possessed a loaded weapon when arrested two years before does not, alone, constitute an exigent circumstance, particularly where there is no other evidence of his likelihood to use the weapon.

■ The last fact asserted as an exigent circumstance was the presence of a surveillance camera at the front and back of defendant's residence and a police radio scanner in the kitchen. We do not believe, under these particular circumstances, that the existence of surveillance equipment constitutes an exigent circumstance justifying an unannounced entry. The mere presence of surveillance cameras and a police scanner does not constitute a threat to police safety absent some evidence that the occupants are likely to use violence against the police or are likely to destroy evidence. The mere fact that the occupants are able to observe the approach or presence of the public, including the police, does not create an exigency where there is no evidence that the occupants will utilize their observations to cause violence or dispose of evidence. Nor do we believe that all these various circumstances viewed in their totality constitute an exigency sufficient to justify the unannounced entry in this case. Accordingly, we find the trial court's denial of the motion to suppress to be manifestly erroneous under the facts of this case.

■ In so holding, we are particularly mindful of the potentially dangerous and volatile situation faced by law enforcement officers

who execute warrants on suspected drug traffickers; however, we must not lose sight of one of the purposes of the knock-and-announce rule which is to avoid violence. Because of the violent and competitive nature of the drug trade, there is the risk that drug traffickers may resort to violence if confronted with an unannounced and unidentified violent entry by unknown persons. Absent specific, particularized evidence that the suspected traffickers will likely use force against an announced police entry, the police are generally less likely to encounter a violent situation by announcing their authority and purpose. See *Ouellette*, 78 Ill. 2d at 520, 401 N.E.2d at 511.

██ The State alternatively contends that we abandon the knock-and-announce requirement, particularly in narcotics cases, and follow the dissent in *Ouellette*. We are disinclined to do so for several reasons. First, as an intermediate appellate court, we are bound to follow the decisions of our supreme court. (*Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 238, 490 N.E.2d 154.) Second, we believe the knock-and-announce rule has continued vitality as it was recently reaffirmed by our supreme court in *People v. Saechao* (1989), 129 Ill. 2d 522, 531, 544 N.E.2d 745. Finally, we believe the knock-and-announce rule, with its exigent circumstances exception, strikes the proper balance between an individual's privacy interests in his home and the State's interest in safe and effective law enforcement.

██ Because of our conclusion that all the evidence seized as a result of the search of defendant's residence should be suppressed, there is little likelihood that the State will have sufficient evidence to retry defendant on the possession of marijuana, possession of cocaine, and armed violence counts. We are compelled, however, to consider the reasonable doubt issue, raised by defendant on appeal as to those three counts, pursuant to *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366. In doing so, we must consider the suppressed evidence as well. *Lockhart v. Nelson* (1988), 488 U.S. ___, 102 L. Ed. 2d 265, 109 S. Ct. 285.

As to the possession of marijuana and possession of cocaine counts, an examination of the evidence reveals that defendant resided in the home with his fiancee. Where narcotics are found on the premises under the control of the defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by the defendant which may be sufficient to sustain a conviction of unlawful possession, absent other facts and circumstances which might create a reasonable doubt as to his guilt. (*People v. Galloway* (1963), 28 Ill.

2d 355, 358, 192 N.E.2d 370; *People v. Trask* (1988), 167 Ill. App. 3d 694, 707, 521 N.E.2d 1222.) Whether there is possession and knowledge is a question of fact, the determination of which will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*Galloway*, 28 Ill. 2d at 358, 192 N.E.2d at 372; *Trask*, 167 Ill. App. 3d at 707, 521 N.E.2d at 1231.) In examining all of the evidence, we believe the State proved defendant guilty beyond a reasonable doubt of possession with the intent to deliver cocaine and possession with intent to deliver marijuana. Accordingly, because the evidence obtained pursuant to the illegal search was improperly admitted, we reverse defendant's convictions of these two counts and remand for a new trial.

We address next defendant's conviction of armed violence. Defendant contends, relying on *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, that he was not proved guilty of the offense of armed violence because the evidence fails to establish that he "carried on or about his person or was otherwise armed" with a deadly or dangerous weapon pursuant to the statutory definition contained in section 33A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1). The State responds that defendant had knowledge of and control over the various weapons located in the house, particularly the loaded pistol in the headboard of his second-floor bedroom and the loaded pistol in the second-floor office where the cocaine was located, and therefore he was "otherwise armed" within the meaning of the armed violence statute. In essence, as the State further elaborated in oral argument, defendant constructively possessed the weapons because the weapons were found in a home occupied by him and therefore he was "otherwise armed."

██ ■ The armed violence statute makes it a felony to commit, while armed with a dangerous weapon, any felony under Illinois law. (*People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48.) The mere presence of a weapon and not its actual use is sufficient to meet the requirements of the armed violence statute. (*Alejos*, 97 Ill. 2d at 507, 455 N.E.2d at 50.) Although the statute does not require use of the weapon, it does require that the person carry the weapon on or about his person or be otherwise armed. (*People v. King* (1987), 155 Ill. App. 3d 363, 369, 507 N.E.2d 1285.) The mere physical existence of the weapon, without knowledge or control, including immediate access to the weapon, is not within the meaning of the armed violence statute. *King*, 155 Ill. App. 3d at 369, 507 N.E.2d at 1288.

██ Here, although there is ample evidence that various weap-

ons, including two loaded pistols, were present in the house, there is no evidence that defendant possessed or had immediate access to any of them while committing a felony, either during the delivery of cocaine to Ben Adams or at the time the law enforcement officers entered defendant's residence, found the cocaine and marijuana, and arrested him. Defendant was found in the kitchen of his house, and the loaded pistols and numerous unloaded weapons were located on the second floor. The only weapons on the first floor were an unloaded shotgun and unloaded .22 caliber rifle found in the downstairs bedroom. Thus, defendant was not "otherwise armed" within the meaning of the armed violence statute, and his conviction of that offense must be reversed without remandment for a new trial.

We would note that the question of whether defendant constructively possessed the various weapons might be relevant to other offenses where possession is an element; however, it is not dispositive of the question of whether defendant was otherwise armed for purposes of the armed violence statute. As noted in *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, the basic legal concepts are different between an armed violence situation and an unlawful possession scenario. (155 Ill. App. 3d at 369, 507 N.E.2d at 1289.) We agree with the reasoning of *King*.

■■ We next consider defendant's contention that he was not proved guilty beyond a reasonable doubt of unlawful delivery of cocaine to Ben Adams. We note that the trial court expressly considered corroborative evidence along with the admissible testimony of Ben Adams. The corroborative evidence included $1,900 in prerecorded money from Adams found on the floor near defendant, cocaine, and a ledger book recording the transaction with Adams for which he was charged, all recovered as a result of the unconstitutional entry into the residence. Consideration of the illegally obtained evidence in corroboration of Adams' testimony prejudiced defendant to the extent we must reverse the trial court's finding of guilt as to the unlawful delivery count. We remand for a new trial, however, as all of the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of unlawful delivery of cocaine.

Due to our disposition of the foregoing issues, we need not address the remaining issues raised by defendant.

We therefore reverse the order of the circuit court of Du Page County denying defendant's motion to suppress the evidence discovered in his residence. We also reverse and remand for a new trial on the possession with intent to deliver cocaine, possession with intent to deliver marijuana, and unlawful delivery of cocaine counts. We re-

verse defendant's armed violence conviction.

The judgment of the circuit court of Du Page County is reversed in part and reversed and remanded in part.

Reversed in part; reversed and remanded in part.

WOODWARD, J., concurs.

JUSTICE GEIGER, dissenting:

I respectfully dissent.

As my colleagues have stated, we must be particularly mindful of the potentially dangerous and volatile situation faced by law enforcement officers who execute warrants on suspected drug traffickers. While the majority may be correct that the police are generally less likely to encounter violence if they announce their authority and purpose before entering a building to execute a warrant, the elevation of that general principle to a rule of law under facts as extreme as these may result in tragic consequences. Law enforcement officers, in attempting to conform their entry tactics to the majority's opinion, may well face unnecessary danger.

When viewed as a totality, the complaint for a search warrant in this case established that the residence was protected by television monitors and a police scanner and that several weapons were available to the occupants. The police were also aware that one of the residents of the house had been arrested with cocaine and a loaded pistol on his person and that he was facing charges of armed violence, a forcible felony, and unlawful delivery of a controlled substance. The combination of these factors, in my opinion, satisfies the test of exigent circumstances set out in *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507, and restated by this court in *People v. Hardin* (1989), 179 Ill. App. 3d 1072, 535 N.E.2d 1044.

The distinction between the facts in this case and those in *Hardin* is too fine. We are by this decision, as Justice Ward said in his dissent in *Ouellette*, "calling upon officers whose lives may be at stake to make nice judgments as to whether decisions that their lives are imperiled are reasonable" (*Ouellette*, 78 Ill. 2d at 525, 401 N.E.2d at 513). I would find that the police acted properly and would affirm the trial court.