887 P.2d 671

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Charlemagne Lacara GARCIA, aka Charlie Garcia, aka Charles Garcia, Defendant–Appellant.**

**No. 16527.**

Intermediate Court of Appeals of Hawai'i.

Jan. 26, 1995.

Tom Griswold, on the brief, Wailuku, Maui, for defendant-appellant.

Rosemary Hawkins Kaholokula, Deputy Prosecuting Atty., County of Maui, on the brief, Wailuku, Maui, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Charlemagne Lacara Garcia (Defendant) appeals his conviction and the order denying his motion to suppress evidence. He argues that the police illegally executed a warrant to search his apartment because they failed to demand entry in compliance with the requirements of Hawai'i Revised Statutes (HRS) § 803–37 (1985). Alternatively, he claims that the statute violates the Constitution of the State of Hawai'i because it authorized the police to break open the door to his apartment when it was not immediately opened.

We agree with Defendant and therefore reverse the circuit court's order denying Defendant's motion to suppress.

Defendant was charged on April 13, 1992, with one count of promoting a dangerous drug in the second degree in violation of HRS § 712–1242(1)(b)(i) (Supp.1992), two counts of prohibited acts related to drug paraphernalia in violation of HRS § 329–43.5(a) (Supp.1992), and one count of promoting a dangerous drug in the third degree in violation of HRS § 712–1243(1) (1985). All of the items which are the subject matter of the counts were seized in a search conducted pursuant to a search warrant. Defendant moved to suppress the evidence obtained in the execution of the search warrant. The court entered findings of fact and conclusions of law denying the motion to suppress, on July 22, 1992. On July 27, 1992, the court filed amended findings of fact and conclusions of law with an order denying the motion to suppress.

Defendant proceeded to trial on July 14, 1992. On July 16, 1992, the jury returned a verdict of not guilty on the charge of promoting a dangerous drug in the third degree, and verdicts of guilty as to all the other counts. The court sentenced Defendant to

five years probation on each count, the terms to run concurrently, and among the special conditions of probation, sentenced Defendant to one year of imprisonment. Defendant appeals from the Judgment filed on September 10, 1992.

Defendant claims, essentially, that the circuit court erred in making the following conclusions of law:

1) The police's failure to demand entry was "of no consequence [under HRS § 803–37] since by knocking and announcing, ['police, search warrant,' the police] indicated a demand to enter," and

2) HRS § 803–37 allows the police to break " 'doors, gates, or other bars to [their entry that] are not immediately opened[.]' " (Emphasis omitted.)

The circuit court's amended findings relate the following events. On March 13, 1992, police officers went to the premises at 647 Luakini Street, Apartment No. 4, in Lāhāina, Maui, to execute a search warrant.[1] Apartment No. 4 "is a small unit within a two-story structure" containing several other units. When the officers approached the front door of the apartment, "Officer Matsuura knocked and announced, 'Police, search warrant.' " "Officer Matsuura could hear voices inside the apartment, [which he believed to be] persons inside talking, or voices from a television set[.] ... [N]o one responded to his knock and announce." Officer Matsuura checked the outside screen door, found it was locked, took a hold of the door's handle with both hands, and pulled the door open, "hearing the hook and eye pop" as he did this. Sergeant Camara was instructed by Officer Matsuura to "kick open the solid wooden door inside the screen door as soon as the screen door was clear[.] ... [He then] kicked the solid wooden door ... and it opened into the ... apartment."

"Approximately ten (10) seconds elapsed from the time Officer Matsuura knocked and announced to the time forcible entry was made into the ... apartment." Sergeant Camara entered the apartment first "with Officer Matsuura close behind him." Inside the apartment, Officer Matsuura "noticed [Defendant] ... at the kitchen sink, turning to the right and heading towards the bathroom." A person known as Audito Agbayani "was seated at the kitchen table with a pair of scissors in his hand and several aluminum foil squares on the kitchen table." Socorro Jubilado and Nancy Yadao were both seated on a bed "about a chair's width from the front door ... [with] [a] small child ... on the floor near the two women." Defendant and Jubilado indicated that Agbayani "was cooking crack cocaine[.]" However, Officer Matsuura "indicated that [Defendant] was closest to the stove[.]" Defendant and Jubilado were the residents of the apartment. "The search warrant authorized a search for crack cocaine and [drug] paraphernalia...."

The relevant statute, HRS § 803–37, states:

§ 803–37 **Power of officer serving.** The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. *If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them.* When entered, the officer may demand that any other part of the house, or any closet, or other closed place in which the officer has reason to believe the property is concealed, may be opened for the officer's inspection, and if refused the officer may break them.

(Emphasis added.)

■ In applying the statute, the circuit court, in its conclusions of law, did not require that the officer specifically "demand entrance[,]" and sanctioned the breaking of the door[2] because it was "not immediately opened[.]" (Emphasis omitted.) The circuit court's conclusions of law are " 'freely re-

---

1. Officer Matsuura testified that they arrived at the door to serve the search warrant at 7:07 in the evening.

2. In its conclusions of law the circuit court referred to "door" and "doors." Under the facts, two doors were forced open.

viewable'" on appeal. *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994) (quoting *AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 628, 851 P.2d 321, 326 (1993)).

## I.

We examine, first, the circuit court's conclusion that the failure of the officer to "demand entry" was "of no consequence since by knocking and announcing, ['Police, search warrant,'] he indicated a demand to enter."

"The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Ortiz*, 74 Haw. 343, 351, 845 P.2d 547, 551 (1993) (citing *State v. Briones*, 71 Haw. 86, 92, 784 P.2d 860, 863 (1989)).

The earliest version of the statute can be found in the 1869 Penal Code of the Hawaiian Kingdom under act 48, section 8[3] and remains substantially unchanged to the present time.[4] Although not specifically citing to the statute, the court in *The King v. Ah Lou You*, 3 Haw. 393 (1872), referring to the execution of a search warrant, stated that, "If the doors of the building designated as the place to be searched are shut, [the officer] must declare his [or her] office and his [or her] business, and demand entrance." *Id.* at 395. As precedent, this proposition has not been overruled.

Moreover, on its face, the statute is clear and unambiguous. The statute directs that "[i]f the doors are shut the officer *must* declare the officer's office and the officer's business *and demand entrance.*" HRS § 803–37 (emphases added). Plainly, three

steps are required before the officer may physically break into the place to be searched—that the officer state his or her office, that he or she state his or her business, and that he or she demand entrance. The court, here, only found that by stating, "Police, search warrant," the officer had "announced his office" and "announced his purpose." Thus, the court's own findings indisputably establish that the police failed to specifically "demand entrance" as directed by the statute.

We cannot conclude that it was "of no consequence" that the officer failed to specifically demand entrance when such a requirement is manifestly set forth and commanded under the statute. We agree, as has been said in interpreting a like statute, that our "tradition of respect for the privacy of the home and the dignity of the citizen even when suspected of criminal behavior forecloses a 'grudging application' of the statute." *United States v. Pratter*, 465 F.2d 227, 230 (7th Cir.1972) (quoting *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958)) (interpreting 18 U.S.C. § 3109).

The State maintains that the knock and statement of "police, search warrant" satisfies the statute's requirement since the demand for entry can·be implied from them, and the statute does not require that the demand for entry be made orally. In support of its position the State relies on *United States v. Smith*, 520 F.2d 74 (D.C.Cir.1975), which interpreted 18 U.S.C. § 3109, the federal counterpart of HRS § 803–37.[5]

---

**3.** The statute provided:

> The officer charged with the warrant, if a house, store, or other building is designated as a place to be searched, may enter it without demanding permission if he finds it open; if the doors be shut he must declare his office and his business, and demand entrance; if the doors, gates or other bars to the entrance be not immediately opened, he may break them. When entered, he may demand that any other part of the house, or any closet, or other closed place in which he has reason to believe the property is concealed, may be opened for his inspection, and if refused he may break them.

Penal Code of the Kingdom of Hawai'i act 48, § 8 (1869).

**4.** The statute underwent stylistic changes, Rev. Laws Haw. § 255–22 (1955), and was subsequently revised to include gender neutral terms.

**5.** 18 U.S.C. § 3109 (1988) states:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his [or her] authority and purpose, he [or she] is refused admittance or when necessary to liberate himself [or herself] or a person aiding him [or her] in the execution of a warrant.

In *Smith,* a police officer knocked on the door of the defendant's apartment and said, " 'Police officers, we have a search warrant[,]' " but "[e]ntry was not otherwise requested." *Id.* at 75. The court sustained the district court's finding that the request to enter "was impliedly made and was understood by [the defendant] because of the knock on the door and the statement of one of the officers that it was the police and they had a search warrant." *Id.* at 77.

■ However, 18 U.S.C. § 3109, which was enacted in 1948, does not require that the police demand entrance. Under that statute, an officer executing a search warrant cannot break into the premises " 'unless he [or she] first (1) identifies himself [or herself] as a police officer, (2) states his [or her] purpose, and (3) is refused admittance.' " *Id.* (quoting *United States v. Watson,* 307 F.Supp. 173, 175 (D.D.C.1969)).

■ Accordingly, the third requirement of 18 U.S.C. § 3109 is clearly different from that of HRS § 803–37 which affirmatively requires that the police demand entrance. *Smith,* therefore, is not applicable or persuasive. We believe, as was said in analogous circumstances that, "[t]he burden of making an express announcement is certainly slight[ ] [and] [a] few more words by the officers would have satisfied the requirement in this case." *Miller,* 357 U.S. at 309–10, 78 S.Ct. at 1196.[6]

■ Therefore, we hold that HRS § 803–37 requires that before attempting forcible entry, the police must specifically "demand entrance," and we know of no more effective way of complying with this requirement than that the demand be orally communicated in the same way the police announce their office and purpose.[7] The police, here, having failed to follow the statute's mandate, illegally entered the premises. The entry being illegal, any items seized as a result of the illegal entry must be suppressed. *See State v. Abordo,* 61 Haw. 117, 120, 596 P.2d 773, 775 (1979) (evidence obtained through an unlawful search and seizure will be excluded from trial).

## II.

Alternatively, we believe it necessary to also consider the circuit court's conclusion that HRS § 803–37 authorized the officers to break the door if it was not immediately opened by the apartment's occupants.

The State asserts that under the statute, "bars to the entrance" must be "immediately opened," and that "[i]mmediately means without lapse of time; without delay; instantly; at once; as soon as." (Citing *Random House College Dictionary* ___ (rev. ed. 1975).)

Defendant reasons that the police were required to wait a "reasonable time" before breaking into the premises, and "[i]f the statute's language, particularly the 'immediately'

---

6. While *Miller v. United States,* 357 U.S. 301, 309, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1958), concerned an entry for the purpose of an arrest, a demand for entry was part of the earliest common law rule controlling when an officer could lawfully break into a house.

    The requirement was pronounced in 1603 in Semayne's Case, 5 Coke Co.Rep. 91a, 11 E.R.C. 629, 77 Eng.Repr. 194, at 195: "In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors * * *.*" *Id.* at 308, 78 S.Ct. at 1195 (emphasis in original).

7. HRS § 803–11 (1985) which authorizes arrests in a house, also requires an officer to "demand entrance." The statute provides:

> **§ 803–11 Entering house to arrest.** Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, the officer or person shall *first demand entrance in a loud voice,* and state that the officer or person is the bearer of a warrant of arrest; or if it is in a case in which arrest is lawful without warrant, the officer or person shall substantially state that information in an audible voice.

HRS § 803–11 (emphasis added).

    As used in HRS § 803–11, the phrase "demand entrance" refers to an oral request. A consistent interpretation of the same phrase used in HRS § 803–37 would appear reasonable in light of the similar circumstances and policies involved.

phrase ... cannot ... be construed to require that [the] police ... wait a reasonable time between notice and breaking in, then [the statute] should be found unconstitutional under ... the [Constitution of the State of Hawai'i]."

■ We concur with Defendant that the plain meaning of "immediately" cannot be construed to require that the police wait a reasonable time before forcibly entering the premises. That being so, we hold that HRS § 803–37 violates the Hawai'i Constitution to the extent that it permits the police to break into the place to be searched if "bars" to their entrance are not immediately opened.

■ Article I, section 7 of the Constitution of the State of Hawai'i provides in pertinent part that, "The right of the people to be secure in their ... houses ... against unreasonable searches, seizures and invasions of privacy shall not be violated...." The objective here being a search, the constitution mandates that police conduct in executing a search warrant must be reasonable. For, it is well-settled "that a lawfully issued warrant to search premises extends to the officers executing it the 'authority to search, in a *reasonable* manner[.]'" *State v. Nabarro*, 55 Haw. 583, 583, 525 P.2d 573, 574 (1974) (quoting *State v. Davenport*, 55 Haw. 90, 100, 516 P.2d 65, 72 (1973)) (emphasis added). "The standards by which any governmental search is to be judged is always its reasonableness, in light of the constitutional guarantee of freedom from unreasonable searches and seizures." *State v. Martinez*, 59 Haw. 366, 368, 580 P.2d 1282, 1284 (1978). *See State v. Provard*, 63 Haw. 536, 538–39, 631 P.2d 181, 183 (1981) (entering defendant's premises with shotguns and drawn revolvers to execute a search warrant was not unreasonable considering that police knew that defendant had access to firearms).

■ In that regard, "[t]he amount of time allowed to lapse between announcement and entry is ... relevant in determining the reasonableness of [the] officers' conduct in executing a search warrant." *People v. Saechao*, 129 Ill.2d 522, 533, 136 Ill.Dec. 59, 63–64, 544 N.E.2d 745, 749–50 (1989) (citing *People v. Wolgemuth*, 69 Ill.2d 154, 13 Ill. Dec. 40, 370 N.E.2d 1067 (1977)).[8] It follows, then, that "a person should be afforded sufficient opportunity to respond to authority before a forcible entry is made." *Id.* 129 Ill.2d at 533, 136 Ill.Dec. at 64, 544 N.E.2d at 750. Thus, even where the operative statute does not require the officers to demand entrance, a reasonable amount of time to respond must be given to the occupants. *Accord United States v. Case*, 435 F.2d 766, 770 (7th Cir. 1970) (18 U.S.C. § 3109 requires that the police give the occupant the opportunity to open the residence); *United States v. Doering*, 384 F.Supp. 1307, 1310 (W.D.Mich.1974) ("[i]n the absence of exigent circumstances, the agents must at least give an opportunity to respond"). Hence, one commentator has summed up the rule as follows: "[An] officer must 'wait a reasonable period of time before he [or she] may break and enter into the premises to be searched.' That is, the occupant must be given a reasonable opportunity to surrender his [or her] privacy voluntarily." 2 W. Lafave *Search and Seizure* § 4.8(c), at 278 (1987) (footnote omitted).

The protection against unreasonable searches would mean very little if the police, armed with a search warrant, were authorized to break down the door of someone's premises unless there was an "instant" response. The requirement that the occupants of the premises admit the police "immediately" forecloses any reasonable opportunity to respond. Consequently, the failure to allow the occupants sufficient time to respond to a

---

8. Unlike our statute, the Illinois statute considered by the court did not require the police officer to announce office and business in addition to demanding entrance, but provided that, "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." *People v. Saechao*, 129 Ill.2d 522, 531, 136 Ill.Dec. 59, 63, 544 N.E.2d 745, 749 (1989) (quoting Ill.Rev.Stat. ch. 38 par. 108–8 (1985)). Nevertheless, whether the police officer did announce his or her authority and purpose and the amount of time elapsing between demand for entry and forcible entry were important considerations in determining whether his or her conduct was "'constitutionally reasonable.'" *Id.* at 531, 136 Ill.Dec. at 63, 544 N.E.2d at 749 (quoting *People v. Wolgemuth*, 69 Ill.2d 154, 166, 13 Ill.Dec. 40, 46, 370 N.E.2d 1067, 1073 (1977)). The *Saechao* court did not address the issue of whether a demand for entrance is a circumstance to be considered.

request for entry renders the request for entry meaningless. That the officers must afford the occupants of the premises a reasonable time to respond to their announcement would appear self-evident, if not necessitated by the purposes underlying such statutory requirements. "The purpose of the knock-and-announce rule 'is to notify the person inside of the presence of [the] police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible.' " [9] *People v. Condon,* 148 Ill.2d 96, 103, 170 Ill.Dec. 271, 274, 592 N.E.2d 951, 954 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 1359, 122 L.Ed.2d 738 (1993) (quoting *People v. Ouellette,* 78 Ill.2d 511, 518, 36 Ill.Dec. 666, 669, 401 N.E.2d 507, 510 (1979)).

We find no rational basis underlying the statutory authorization to break into the premises if the "bars to the entrance are not immediately opened," in light of the purposes behind statutes such as HRS § 803–37.

▆▆ We hold, then, that under HRS § 803–37, occupants of the premises to be searched must be given a reasonable time to respond to the police's demand for entry to serve a search warrant.

### III.

#### A.

But what would constitute a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case. *People v. Jennings,* 204 Ill.App.3d 1075, 1079, 150 Ill.Dec. 436, 438, 562 N.E.2d 1239, 1241 (1990) (whether a defendant was given sufficient time to respond depends on surrounding facts and circumstances) (citing *People v. Trask,* 167 Ill.App.3d 694, 704, 118 Ill.Dec. 529, 536, 521 N.E.2d 1222, 1229 (1988)). We turn, then, to the circumstances of this case.

According to the lower court's findings of fact, Officer Matsuura knocked and announced the officers' presence upon arrival at the front door of the apartment. Officer Matsuura heard voices from inside the apartment but could not identify whether they were those of the occupants of the apartment or were being emitted from a television set. Officer Matsuura determined that the screen door was locked and instructed Sergeant Camara to kick open the solid wooden door as soon as the screen door was cleared by Officer Matsuura.

The court found that "[a]pproximately ten (10) seconds elapsed from the time Officer Matsuura knocked and announced to the time forcible entry was made into the ... apartment." This indicates, then, that the amount of time that the police waited for a response before gaining entry was less than ten seconds.[10] Several seconds necessarily

---

**9.** The knock-and-announce statutes are also designed to ensure that "[e]very householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958). "[A]nother facet of the rule of announcement [is], generally, to safeguard officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there." *Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968).

**10.** A reasonable interpretation of the court's finding of fact that the procedure from knock through entry took ten seconds is supported by the record:

Q. [Defense counsel] And from the time you first knocked until the time you guys *entered through* the doors was approximately 10 seconds you said, right?

A. [Officer Matsuura] Ten or so seconds, yes, sir.

(Emphasis added.)

Indeed, the entire process involving arrival, knocking on the door, announcing, "police, search warrant," breaking through two doors, securing the apartment and its occupants, serving the warrant on Defendant, and advising him and all the occupants of their Miranda warnings, did not exceed one minute:

Q. [Prosecutor] Approximately what time did you approach this residence to serve the search warrant?

A. [Officer Matsuura] It was 1907, which is 7:07 p.m.

. . . . .

Q. And what time did you enter the apartment?

A. It was still 7:07 p.m.

. . . . .

Q. And approximately what time did you serve Charlemagne Garcia with a copy of the search warrant and advised him of his constitutional rights?

A. As soon as we made entry, the first thing we do is we secure the residence, the room for

elapsed to allow Officer Matsuura to make the determination that the screen door was locked, to force the screen door open by "popping" its hook and eye lock with both hands, and for Sergeant Camara to kick open the wooden door. That the occupants were afforded less than ten seconds to respond is also implicitly acknowledged by the lower court's conclusion that HRS § 803–37 allowed the officers to forcibly enter the premises if the doors were not "immediately" opened after their knock and announcement.

Defendant testified that he did not hear the police knock or announce their presence. Jubilado, who was sitting near the door, testified at the motion to suppress that she heard knocking, but the police entered the apartment within a couple of seconds of the knocking.

█ Based upon the circumstances of this case, we conclude that the officers' conduct in executing the search warrant was constitutionally unreasonable. Whatever portion, if any, of the ten seconds that the police allowed to elapse before they broke through two doors was clearly insufficient to afford the occupants a reasonable opportunity to open the doors.

### B.

█ Our holding does not prevent police executing a warrant from immediately entering the premises if exigent circumstances justify such an entry. *State v. Lloyd*, 61 Haw. 505, 512, 606 P.2d 913, 918 (1980). The State cites *Lloyd* as an example of a case where a warrantless entry of a home was justified by the circumstances, but as indicated below, those circumstances are not present in this case. In *Lloyd*, the police followed defendant to his residence after he picked up a box they believed contained marijuana. The police waited "[s]everal minutes" after defendant entered his home with the box before knocking at the door and shouting "Police!" *Id.* at 507, 606 P.2d at

916. The knock and announcement was "immediately followed [by] a 'scurrying about' within the house and then a 'crashing' sound toward the rear of the building. Upon hearing these sounds, [the police] immediately pushed open the unlocked front door and . . . entered the premises." *Id.* The court held that the police's immediate entry into defendant's residence was fully justified because they believed that the sounds they heard after they knocked and announced their presence indicated "that flight was in progress and that there was a real danger that the contraband might be removed or destroyed." *Id.* at 513, 606 P.2d at 919.

More to the point, however, is *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973). In *Davenport*, the defendant challenged the manner in which the police gained entry into his residence in their execution of a search warrant for marijuana. Unlike the police in the present case, the officers in *Davenport* satisfied all the requirements of HRS § 803–37 of declaring their office, their business, and demanding entry. The officer "knocked five times and announced, 'Police Officer, open up, we have a search warrant[,]' " all in full compliance with HRS § 803–37. In contrast to the officers here, the officers there waited "approximately thirty seconds for a response[.]" *Id.* at 98, 516 P.2d at 71. The court held that exigent circumstances justified the forced entry into defendant's residence because, while waiting outside the residence, an "officer heard sounds of 'running' within." *Id.*

The trial court, in the present case, concluded that, "The fact that no one answered the door when Officer Matsuura knocked and announced, the fact that he assumed people were inside when he heard voices, and the fact that crack cocaine is readily disposable gave grounds for a quick entry."

█ The fact that no one answered the door did not justify the immediate entry into the apartment. As we stated above, the

safety reasons. As soon as everyone is secured, I served the copy to Mr. Garcia, and I advised him as well as everybody else verbally of their rights.
Q. And what time was that?
A. That was still going towards 1907.

Q. So one minute or less was the time you knocked and announce [sic] until the time you forcibly entered the apartment?
A. Yes.
Q. Is this normal when you serve a search warrant that it happens that quickly?

occupants apparently had no reasonable opportunity to respond to the knock and announcement, so their failure to respond cannot be relied upon as an "exigent circumstance."

Nor did the fact that the police heard voices emanating from Defendant's residence amount to an exigent circumstance. Clearly, the sound of voices from the occupants or from a television set is unlike the "scurrying about" or the "crashing" noise heard by the police in *Lloyd*, or the sounds of "running" heard in *Davenport*, and cannot be characterized as reasonably creating a realistic fear that contraband was about to be destroyed.

■■■ In addition, the involvement of contraband, by itself, does not supply the necessary justification for immediate entry into someone's premises. "The mere fact that drugs [are] involved [is] not an exigent circumstance. That contraband is easily removed, hidden, or destroyed is not, in and of itself, an exigent circumstance." *State v. Dorson*, 62 Haw. 377, 385, 615 P.2d 740, 746 (1980).

The exigent circumstances the State needs to show to justify a forced entry, when the presence of drugs is suspected, are that "the occupants of the suspected locale are aware of the police presence and are taking steps which the police realistically fear may lead to destruction of the contraband." *Davenport*, 55 Haw. at 99, 516 P.2d at 72. Contrastingly, the circumstances here indicate there was no immediate need to enter Defendant's apartment. The facts here are obviously distinguishable from *Lloyd* and *Davenport* where the "[p]rompt and immediate police response was clearly dictated by the circumstances." *Lloyd*, 61 Haw. at 513, 606 P.2d at 919.

### IV.

Based on the foregoing reasons, we reverse the circuit court's order filed on July 27, 1992, denying the motion to suppress, and vacate the Judgment filed on September 10, 1992.