943 P.2d 908

STATE of Hawai'i, Plaintiff–Appellee,

v.

Victor MONAY, Defendant–Appellant
(Cr. No. 95–0023).

STATE of Hawai'i, Plaintiff–Appellee,

v.

Jonathan PILA, Defendant–Appellant
(Cr. No. 95–0024).

STATE of Hawai'i, Plaintiff,

v.

Reynaldo Jacintho ABRIGO, Defendant
(Cr. No. 95–0025).

No. 20298.

Supreme Court of Hawai'i.

Aug. 28, 1997.

John H. Murphy, on the briefs, Lihue, for defendant-appellant Victor Monay.

Warren C.R. Perry, on the briefs, Lihue, for defendant-appellant Jonathan Pila.

Craig A. De Costa, Deputy Prosecuting Attorney, on the briefs, Lihue, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendants-appellants Victor Monay and Jonathan Pila (collectively, Defendants) appeal from the circuit court's order denying their joint motion to suppress evidence and from their respective judgments of conviction. Defendants argue that the circuit court improperly denied their motion to suppress because police: (1) failed to expressly "demand entrance" in violation of Hawaii's search warrant knock and announce statute, Hawai'i Revised Statutes (HRS) § 803–37 (1993); and (2) forced entry two seconds after announcement in violation of their constitutional right against unreasonable searches and seizures. We agree. Accordingly, we reverse the circuit court's order, as well as the Defendants' respective judgments of conviction.

## I. BACKGROUND

The facts are undisputed. At 11:05 a.m. on January 26, 1995, Officer Buddy Wilson and several other Kauai Police Department (KPD) officers went to Pila's apartment to execute a search warrant issued on suspected drug activity. As the officers approached the apartment, they saw Uilani Huddy seated at a picnic table about fifteen to twenty feet from the apartment's front door. Officer Wilson believed Huddy lived with Pila based on information obtained from a confidential informant and from KPD Detective Wesley Kaui. Officer Wilson acknowledged Huddy, identified himself as a police officer, and stated that he had a search warrant.

The officers then approached the closed front door of the apartment. Officer Wilson knocked on the door and announced "police, search warrant," but did not expressly demand entrance. The officers

heard no suspicious sound or movement inside the apartment. Within two seconds of the announcement, Officer Wilson opened the unlocked door, and the officers entered the apartment.

Upon entry, the officers saw Defendants and Reynaldo Abrigo seated around a coffee table. On the table were two clear plastic packets containing what appeared to be crystal methamphetamine, a small spoon, a gram scale, and other drug-related paraphernalia, all of which were seized.

Defendants and Abrigo were each charged with one count of Promoting a Dangerous Drug in the Second Degree, in violation of Hawai'i Revised Statutes (HRS) §§ 712–1242(1)(a) and 712–1242(1)(b)(i) (1993), and one count of Possession with Intent to Use Drug Paraphernalia, in violation of HRS § 329–43.5 (1993).

Before trial, Defendants and Abrigo jointly moved to suppress the seized evidence on statutory and constitutional grounds. The circuit court filed its findings of fact, conclusions of law, and order denying the motion to suppress on February 27, 1995. Defendants and Abrigo were subsequently tried and found guilty as charged. The circuit court entered judgments of conviction on November 12, 1996. Defendants [1] timely appealed.

## II. STANDARDS OF REVIEW

A trial court's findings of fact are reviewed under the clearly erroneous standard. *State v. Gabalis,* 83 Hawai'i 40, 46, 924 P.2d 534, 540 (1996). A trial court's conclusions of law are reviewed under the right/wrong standard. *State v. Dixon,* 83 Hawai'i 13, 16, 924 P.2d 181, 184 (1996). The interpretation of a statute is a question of law reviewable *de novo. State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996).

## III. DISCUSSION

### A. Failure to Demand Entrance Violated HRS § 803–37

HRS § 803–37 provides in relevant part:

---

1. Abrigo has not appealed from the circuit court order or from his judgment of conviction.

The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. *If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance.* If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them.

(Emphasis added.)

The Intermediate Court of Appeals (ICA) previously addressed HRS § 803–37 in *State v. Garcia,* 77 Hawai'i 461, 887 P.2d 671 (App. 1995). In *Garcia,* police went to the defendant's apartment to execute a search warrant for drugs and drug paraphernalia. Finding the front door shut, the officers knocked and announced "police, search warrant." They received no response but heard voices within the apartment. Without any further communication, the police broke the outer screen and inner wooden doors, entered the apartment, and executed the search warrant.

Recognizing that the "tradition of respect for the privacy of the home and the dignity of the citizen even when suspected of criminal behavior forecloses a 'grudging application' of the statute[,]" the ICA rejected the argument that a demand for entry could be implied from the statement "police, search warrant." Rather, the ICA held that the plain and unambiguous language of HRS § 803–37 requires that, "before attempting forcible entry, the police must specifically 'demand entrance[ ]'" and "that the demand [must] be orally communicated in the same way the police announce their office and purpose." 77 Hawai'i at 466, 887 P.2d at 676 (footnote omitted). Failure to do so rendered the entry illegal and required suppression of all items seized.

We agree with the ICA and hold that the plain and unambiguous language of HRS § 803–37 requires police to expressly demand entrance when the doors to a place to be searched are shut before attempting forcible entry. Failure to do so here, as in *Garcia,* renders the entry illegal and requires suppression of all of the evidence seized.

### B. Forced Entry Two Seconds After Announcement Violated Article I, Section 7 of Hawai'i Constitution

■ As stated, HRS § 803–37 further provides that, after declaring the officer's office and business and demanding entrance, "[i]f the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them."

■ The ICA also addressed this portion of the statute in *Garcia.* Noting that "[t]he protection against unreasonable searches would mean very little if the police, armed with a search warrant, were authorized to break down the door of someone's premises unless there was an 'instant' response[,]" the ICA refused a literal construction of the statutory language as unconstitutional. Rather, according to the ICA, "[t]he standards by which any governmental search is to be judged is always its reasonableness, in light of the constitutional guarantee of freedom from unreasonable searches and seizures." *Garcia,* 77 Hawai'i at 467, 887 P.2d at 677 (quoting *State v. Martinez,* 59 Haw. 366, 368, 580 P.2d 1282, 1284 (1978)). Thus, the ICA held that, absent the existence of exigent circumstances, police must afford occupants of a place to be searched a "reasonable time" to respond to an announcement before forcing entry. *Id.* at 468, 887 P.2d at 678. We agree.

"[W]hat would constitute a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case." *Id.* (citations omitted). We hold that, under the circumstances of this case, two seconds was patently unreasonable because no exigent circumstances existed.

■ The mere fact that drugs are involved does not supply the requisite exigency. "That contraband is easily removed, hidden, or destroyed is not, in and of itself, an exigent circumstance." *Garcia,* 77 Hawai'i at 470, 887 P.2d at 680 (quoting *State v. Dorson,* 62 Haw. 377, 385, 615 P.2d 740, 746 (1980)). Rather, the prosecution must show that "the occupants of the suspected locale [were] aware of the police presence and [were] taking steps which the police realistically

fear[ed] may lead to the destruction of evidence." *Id.* (quoting *State v. Davenport,* 55 Haw. 90, 99, 516 P.2d 65, 72 (1973) (holding that sounds of running within the residence thirty seconds after announcement provided exigency justifying forced entry)); *see also State v. Lloyd,* 61 Haw. 505, 513, 606 P.2d 913, 919 (1980) (holding that sounds of "scurrying about" and "crashing" within the residence immediately following announcement provided exigency justifying forced entry). There are no facts showing the existence of such an exigency in this case.

Accordingly, we hold that the forced entry by police two seconds after the knock and announcement was constitutionally insufficient to give the occupants a reasonable opportunity to respond.

## IV.  CONCLUSION

Because police failed to expressly "demand entrance" in violation of HRS § 803–37 and unreasonably forced entry two seconds after announcement, the seized evidence should have been suppressed. Accordingly, we reverse the circuit court's order denying the Defendants' joint motion to suppress, as well as the Defendants' respective judgments of conviction.

RAMIL, Justice, concurring and dissenting with whom NAKAYAMA, Justice, joins.

I concur with the majority's decision to reverse, but solely on the basis that forced entry by the police only two seconds after announcing their presence was a violation of the defendants' constitutional right against unreasonable search and seizure. I respectfully dissent, however, with the analysis regarding the "demand entrance" portion of HRS § 803–37.

Relying on the ICA's decision in *State v. Garcia,* 77 Hawai'i 461, 887 P.2d 671 (App. 1995.), the majority concludes that "the plain and unambiguous language of HRS § 803–37 requires police to expressly demand entrance" in order to assure the constitutionality of a subsequent entry. In my view, this reading of the statute is unnecessarily rigid,

inasmuch as the police in the instant case effectuated the intent behind HRS § 803–37.

In *State v. Dixon,* 83 Hawai'i 13, 924 P.2d 181 (1996), we cited with favor the case of *State v. Myers,* 102 Wash.2d 548, 689 P.2d 38, 42 (1984), which stated that the purposes of the "knock and announce" rule were threefold: "(1) reduction of potential violence to both occupants and police resulting from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy." In *Dixon,* we held that the use of a ruse to gain entry is not constitutionally unsound if "the purposes of the knock and announce rule are not frustrated[.]" *Id.* at 23, 924 P.2d at 191.

Additionally, HRS § 803–37 authorizes officers to gain entry by force if "the doors, gates or other bars to the entrance are not *immediately* opened." (Emphasis added.) In *Garcia,* however, the ICA refused to interpret this portion of the statute literally. Citing *Garcia,* the majority agrees and states that "[t]he standards by which any governmental search is to be judged is always its *reasonableness*[.]" *Garcia,* 77 Hawai'i at 467, 887 P.2d at 677 (citation and internal quotation marks omitted) (emphasis added).

Thus, the validity of an entry to execute a search warrant hinges, in part, on two key factors: (1) the reasonableness of police behavior under the circumstances and (2) whether the purposes behind the knock and announce rule are furthered. Both requirements would have been fulfilled in this case, had the officers not forced their way into the dwelling after only two seconds. Nevertheless, their behavior, taken as a whole, did translate into a demand for entry. The officers (1) knocked, (2) declared their office, and (3) announced their business—that they had a search warrant. These actions were reasonable and realized the intent behind HRS § 803–37. Accordingly, I would reverse on the basis that the forced entry was unreasonable after a short lapse of time, and not because the officers failed to orally demand entry.