**Electronically Filed
Supreme Court
SCWC-18-0000381
22-JUN-2020
07:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellant,

vs.

DAWN NAEOLE,
Petitioner/Defendant-Appellee.

SCWC-18-0000381

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000831; CR. NO. 1PC161001997)

June 22, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

Among the rights guaranteed by the Constitutions of the United States and the State of Hawai'i is the fundamental right of the people to be secure in their homes from unreasonable searches, seizures, and invasions of privacy. See U.S. Const. amend. IV; Haw. Const. art. I, § 7. "Both the fourth amendment to the United States Constitution and article

I, section 7 of the Hawai'i Constitution ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable governmental intrusions." State v. Meyer, 78 Hawai'i 308, 311-12, 893 P.2d 159, 162-63 (1995). "Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." Miller v. United States, 357 U.S. 301, 313 (1958). To safeguard this constitutional guarantee, "[t]he standards by which any governmental search is to be judged is always its reasonableness[.]" State v. Garcia, 77 Hawai'i 461, 467, 887 P.2d 671, 677 (App. 1995) (quoting State v. Martinez, 59 Haw. 366, 368, 580 P.2d 1282, 1284 (1978)). More specifically, when the police demand entrance to a person's home pursuant to a search warrant, they are constitutionally required to afford the occupants of the home a "reasonable time" to respond before forcing entry. State v. Monay, 85 Hawai'i 282, 284, 943 P.2d 908, 910 (1997) (quoting Garcia, 77 Hawai'i at 468, 887 Hawai'i at 678).

In this case, we consider whether the Honolulu Police Department ("HPD") gave Petitioner/Defendant-Appellee Dawn Naeole ("Naeole") a reasonable amount of time to respond to their demand for entry when they executed a search warrant at her home in the early morning of September 4, 2015. Naeole, who

2

was suspected of illegal drug activity, had the front door of her 900 square foot home broken down at approximately 6:15 a.m. after the police knocked, announced their presence, and demanded entry four times within the span of twenty-five seconds. A police officer heard a female voice inside the house after the third "knock-and-announce," but the HPD officers had no reason to believe that Naeole was fleeing or that any evidence was being destroyed. Under these circumstances, we hold that the amount of time afforded to Naeole to respond to the demand for entry was not reasonable, and thus vacate the Intermediate Court of Appeals' ("ICA") opinion to the contrary.

## I.   BACKGROUND

On September 4, 2015, HPD officers executed a search warrant at the home of Naeole, seizing "approximately 952.483 grams of a substance resembling methamphetamine, a medicine bottle containing 55 Loraz[e]pam tablets, a medicine bottle containing 79 Tramad[]ol tablets, 17.34 grams of marijuana, various purported paraphernalia and United States currency." On December 27, 2016, Naeole was charged by indictment in the Circuit Court of the First Circuit ("circuit court") with one count of promoting a dangerous drug in the first degree, in violation of Hawai'i Revised Statutes ("HRS") § 712-1241(1)(a)(i) (Supp. 2016), two counts of promoting a harmful drug in the second degree, in violation of

3

HRS § 712-1245(1)(a) (2014), one count of promoting a detrimental drug in the third degree, in violation of HRS § 712-1249 (2014), and one count of possessing drug paraphernalia, in violation of HRS § 329-43.5(a) (Supp. 2016). Prior to trial, Naeole filed a motion to suppress all evidence obtained as a result of the execution of the search warrant. Her motion claimed that HPD's execution of the warrant violated HRS § 803-37[1] and article I, section 7 of the Constitution of the State of Hawai'i.[2] Hearings were held on Naeole's motion to suppress on January 16 and March 6, 2018.[3]

During the hearings, HPD Officer Stephen Roe ("Officer Roe") testified that sixteen police officers accompanied by a supervisor executed the search warrant at Naeole's home. The

---

[1]     HRS § 803-37 (Supp. 2017) provides in part:

The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. If the doors are shut, the officer shall declare the officer's office and the officer's business and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them.

[2]     Article I, section 7 of the Constitution of the State of Hawai'i provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

[3]     The Honorable Rom A. Trader presided.

4

officers were attired in "green [battle dress uniforms], top and bottom, a load-bearing plate carrier, exterior body armor, a ballistic helmet" and carrying "either [an] M4 [rifle] and a sidearm, Glock 21, or just a Glock 21, depending on [their] role." They arrived at approximately 6:00 a.m.[4] The "perimeter team" secured the exterior of the home, while the "entry team" "stack[ed] up or form[ed] a stick in front of the residence along the wall[.]" Officer Roe, who was in the entry team, was instructed by his supervisor to initiate the "knock-and-announce procedure[.]" He conducted the procedure, which consists of three knocks and an announcement, four times. During the hearings, Officer Roe demonstrated the four knock-and-announce procedures for the court: "And it's basically like this: (Knocks.) Police. We have a search warrant. Open the door now. (Knocks.) Police. We have a search warrant. Open the door now. (Knocks.) Police. We have a search warrant. Open the door now. (Knocks.) Police. We have a search warrant. Open the door now."

Officer Roe testified that there was no response from within Naeole's home after the first two knock-and-announce procedures, but that after the third, he heard a female voice

---

[4] The search warrant provided that it could be served between 6:00 a.m. and 10:00 p.m. on or before September 4, 2015. The circuit court found that the warrant was executed at about 6:15 a.m.

coming from inside.  The voice seemed like it was directed at the officers, but he could not make out the words.  He conducted a fourth knock-and-announce procedure, but there was no response.  After the fourth knock-and-announce procedure, the officers on the entry team were instructed by their supervisor to breach the front door.

Naeole testified during the hearings that she had just woken up and was right by the hallway, heading toward the bathroom, when she heard banging and then saw police officers enter her home.  She testified that she didn't hear any repeated knocking, any announcement that there were police officers at the door, or any request or demand to open the door.  She testified that, after they were already in her house, the officers told her they had a search warrant, but that they refused to show her the warrant.  She testified that her home is about 900 square feet in size.

Naeole's neighbor, Zachariah Wentling, also testified during the hearings.  He testified that he came out his front door when he heard his dogs barking, saw police officers "wrestling with" or "messing with" Naeole's front gate, ran back into his house to grab his phone, and, when he came back out, saw the officers break down Naeole's front door.  He testified that when he came back outside, he saw the officers bang on the door, say, "This is the police[,]" and then, without waiting for

a response, brake down the door. A video he recorded on his phone which showed the officers breaking down the front door of Naeole's home was entered into evidence at the hearings.

The circuit court granted Naeole's motion to suppress and ordered that all evidence seized as a result of the execution of the search warrant would be inadmissible at trial. The court found that Officer Roe's testimony was "credible and compelling[,]" and that, based on his in-court demonstration, the four knock-and-announce procedures took place "in a span of about twenty-five seconds" with "no discernable pause" between each one. The court also found that the officers "heard voices" after the third knock-and-announce procedure, but that "there was no evidence that the occupants were aware of the police presence and were taking steps to destroy any evidence, that would justified [sic] breaching the door based on exigent circumstances." It concluded that, although HPD had complied with the requirements of HRS § 803-37, its execution of the search warrant violated Naeole's right against unreasonable searches and seizures under article I, section 7 of the Hawai'i Constitution.

The State appealed the circuit court's order to the ICA. The ICA vacated the circuit court's order, holding that, "[u]nder the circumstances of this case, . . . Naeole was afforded a reasonable amount of time to respond to HPD's demand

for entry to serve the search warrant." State v. Naeole, No. CAAP-18-0000381, 2019 WL 2067113, at *4 (App. May 10, 2019) (mem.). Naeole filed an application for writ of certiorari with this court, which was granted.

## II.  STANDARD OF REVIEW

"The appellate court reviews a circuit court's ruling on a motion to suppress de novo to determine whether the ruling was right or wrong." State v. Williams, 114 Hawai‘i 406, 409, 163 P.3d 1143, 1146 (2007) (internal quotation marks omitted) (quoting State v. Kauhi, 86 Hawai‘i 195, 197, 948 P.2d 1036, 1038 (1997)).

## III.  DISCUSSION

The "knock-and-announce" procedure is not a mere formality or police tactic; it is an essential restraint on the power of the State which has deep roots in both the Anglo-American and Hawaiian legal systems. See Miller, 357 U.S. at 313 ("The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application."); Garcia, 77 Hawai‘i at 465, 887 P.2d at 675 (tracing the modern knock-and-announce statute back to the 1869 Penal Code of the Hawaiian Kingdom and The King v. Ah Lou You, 3 Haw. 393 (1872)). "The search warrant serves to protect individuals' constitutional right to be 'secure in their persons, houses,

8

papers, and effects, against unreasonable searches and seizures. . . .'" State v. Diaz, 100 Hawai'i 210, 218, 58 P.3d 1257, 1265 (2002) (quoting Hawai'i Const. art. I, § 7). The purpose of the search and seizure provision of the Hawai'i constitution, and the fourth amendment to the United States Constitution, is to "safeguard individuals from the arbitrary, oppressive, and harassing conduct of government officials." Id. at 217-18, 220, 58 P.3d at 1264-65, 1267. The knock-and-announce rule is one mechanism that protects this right. Id. Its purpose is to give the "person time to respond, avoid violence and protect privacy as much as possible." State v. Quesnel, 79 Hawai'i 185, 191, 900 P.2d 182, 188 (App. 1995)(citing Garcia, 77 Hawai'i at 468, 887 P.2d at 678).

HRS § 803-37 defines the knock-and-announce rule and outlines the powers of a police officer charged with the execution of a search warrant. The statute is intended to "(1) reduce the potential of violence to both occupants and police resulting from an unannounced entry; (2) prevent unnecessary property damage; and (3) protect the occupant's right of privacy." State v. Dixon, 83 Hawai'i 13, 14, 924 P.2d 181, 182 (1996). Compliance with the statute decreases the potential for violence and unnecessary property damage. State v. Harada, 98 Hawai'i 18, 28, 41 P.3d 174, 184 (2002). If the officer charged

with execution of a search warrant finds that the doors of the place to be searched are shut, the statute requires "three steps . . . before the officer may physically break into the place to be searched—that the officer state his or her office, that he or she state his or her business, and that he or she demand entrance." Garcia, 77 Hawaiʻi at 465, 887 P.2d at 675. The third step requires the officer to "expressly demand entrance[.]" Monay, 85 Hawaiʻi at 284, 943 P.3d at 910. "[O]rally communicat[ing]" a demand for entry "in the same way the police announce their office and purpose" constitutes such an express demand. Garcia, 77 Hawaiʻi at 466, 887 P.2d at 676. In the present case, no party challenges the circuit court's conclusion that HPD complied with the statutory requirements of HRS § 803-37.

What is at issue in this case is whether HPD gave Naeole or any other occupants of her home a reasonable amount of time to respond to their demand for entry. HRS § 803-37 provides that an officer executing a search warrant may break "the doors, gates, or other bars to the entrance" if they "are not immediately opened[.]" (Emphasis added). However, we have held that a literal construction of the term "immediately" would contravene the constitutional right to be free of unreasonable searches, seizures, and invasions of privacy. Monay, 85 Hawaiʻi at 284, 943 P.2d at 910; see Garcia, 77 Hawaiʻi at 467, 887 P.2d

10

at 677 ("The protection against unreasonable searches would mean very little if the police, armed with a search warrant, were authorized to break down the door of someone's premises unless there was an 'instant' response."); Haw. Const. art. I, § 7. Thus, we have held that, "absent the existence of exigent circumstances, police must afford occupants of a place to be searched a 'reasonable time' to respond to an announcement before forcing entry." Monay, 85 Hawai'i at 284, 943 P.2d at 910 (quoting Garcia, 77 Hawai'i at 468, 887 P.2d at 678). Allowing a reasonable time to respond gives an occupant "sufficient opportunity to respond to authority" and "to surrender his or her privacy voluntarily" "before a forcible entry is made." Garcia, 77 Hawai'i at 467, 887 P.2d at 677 (citations and brackets omitted). Without it, the request for entry is meaningless. Quesnel, 79 Hawai'i at 190, 900 P.2d at 187.

"[W]hat would constitute a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case." Monay, 85 Hawai'i at 284, 943 P.2d at 910 (quoting Garcia, 77 Hawai'i at 468, 887 P.2d at 678). Pursuant to our constitution, we have not adopted a general or "bright-line" rule for what constitutes a reasonable amount of time in all cases, or even in a subset of cases, as is urged by the parties in this case. Rather, our appellate courts have appropriately determined what constitutes a reasonable period of

time by considering the totality of the circumstances in each individual case. Cf. United States v. Banks, 540 U.S. 31, 36 (2003) ("[W]e have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of the circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.").

In Garcia, police officers executed a search warrant at a small apartment unit at 7:07 p.m. 77 Hawai'i at 464, 464 n.1, 887 P.3d at 674, 674 n.1. A police officer knocked on the door of the apartment and announced, "Police, search warrant." Id. at 464, 887 P.2d at 674. The officer could hear voices inside, which he believed to be either people talking or voices from a television, but no one responded to his knock-and-announce. Id. The officer then pulled open the locked exterior screen door of the apartment and ordered another officer to kick open the interior wooden door. Id. "Approximately ten (10) seconds elapsed from the time [the officer] knocked and announced to the time forcible entry was made into the . . . apartment." Id. The ICA reversed the circuit court's denial of the defendant's motion to suppress, holding that allowing the

occupants of the apartment less than ten seconds to respond was "constitutionally unreasonable."[5]  Id. at 469, 887 P.2d at 679.

Six months after deciding Garcia, the ICA issued a similar opinion in State v. Quesnel, 79 Hawai'i 185, 900 P.2d 182.  In Quesnel, police officers executed a search warrant at the defendants' home at approximately 6:45 p.m.  Id. at 188, 900 P.2d at 185.  An officer pounded on the door and yelled, "Police.  Search warrant[,]" and then kicked in the door when no one answered.  Id.  The circuit court found that the entire process, from the knock to the entry, lasted approximately ten seconds, and that the police "counted 'one, two, three'" between making the announcement and kicking open the door, although there was conflicting evidence suggesting that as many as five seconds may have elapsed between the announcement and the forced entry.  Id. at 189-90, 900 P.2d at 186-87.  The ICA reversed the circuit court's denial of the defendants' motion to suppress, holding that, whether it was three or five seconds, the amount of time to respond was not reasonable.[6]  Id. at 190, 900 P.2d at 187.

---

[5]  The ICA also held, in the alternative, that the evidence had to be suppressed because the officer did not make an express demand for entry, in violation of HRS § 803-37 (1985).  Garcia, 77 Hawai'i at 466, 887 P.2d at 676.

[6]  As in Garcia, the ICA also held that the evidence had to be suppressed because the officer did not make an express demand for entry, in violation of HRS § 803-37 (1985).  Quesnel, 79 Hawai'i at 189-90, 900 P.2d at 186-87.

In Monay, police officers executed a search warrant at an apartment at 11:05 a.m. 85 Hawai'i at 283, 943 P.2d at 909. Officers approached the closed front door of the apartment and an officer "knocked on the door and announced, 'police, search warrant,' but did not expressly demand entrance. The officers heard no suspicious sound or movement inside the apartment. Within two seconds of the announcement, [the officer] opened the unlocked door, and the officers entered the apartment." Id. This court, embracing the reasoning of Garcia, reversed the circuit court's denial of the defendants' motion to suppress, holding that "the forced entry by police two seconds after the knock and announcement was constitutionally insufficient to give the occupants a reasonable opportunity to respond."[7] Id. at 285, 943 P.2d at 911.

In State v. Diaz, police officers executed a search warrant at a video store at approximately 6:45 p.m., during the store's regular business hours. 100 Hawai'i at 213, 58 P.3d at 1260. Upon entering the store, a detective asked a customer if a door on the makai side of the store was an office door. Id. After the detective received an affirmative response, an officer knocked three times on the office door and stated, "[P]olice

_____

[7] We also held, in the alternative, that the evidence had to be suppressed because the officer did not make an express demand for entry, in violation of HRS § 803-37 (1993). Monay, 85 Hawai'i at 284, 943 P.2d at 910.

department, search warrant[,]" but there was no response.  Id.
After waiting approximately fifteen seconds, the officer was
instructed to break the door, which he did by kicking it in.
Id.  Although this court held that HRS § 803-37 (1993) is
inapplicable to a search of the interior office of a commercial
establishment that is open for business, we nevertheless held
that a reasonable expectation of privacy did exist and that the
police were required to give the defendant a reasonable amount
of time to respond.  Id. at 219-21, 58 P.3d at 1266-68.
However, we upheld that circuit court's denial of the
defendant's motion to suppress, holding that, "[u]nder the
circumstances of this case, expecting the occupant of the
interior office to be alert and responsive during business hours
is reasonable[,]" and that forced entry after fifteen seconds
was thus constitutional.  Id. at 221, 58 P.3d at 1268.

Considering the totality of the circumstances in the
present case, we conclude that the amount of time HPD gave the
occupants of Naeole's home to respond to their requests for
entry was not reasonable.  The circuit court found that Officer
Roe conducted the knock-and-announce procedure four times within
the span of about twenty-five seconds without any discernable
pause between each one.  This is not a reasonable amount of time
to expect the occupant of a modestly-sized home to respond to an
early morning demand for entry.  At the time HPD executed the

15

search warrant, most people would be expected to be asleep, just waking up, or otherwise indisposed by the customary activities of the early morning, such as showering, getting dressed, or eating breakfast.[8]  In other words, it was not reasonable to expect the occupants of Naeole's home to be "alert and responsive" during the early morning hours.  Id.  Furthermore, Officer Roe did not "discernabl[y] pause" between each knock-and-announce procedure, even after hearing a voice that may have been directed at the HPD officers.  Not pausing between announcements and not allowing additional time to respond after hearing a voice from inside the home would have made it difficult for an occupant of the home to indicate compliance and voluntarily submit to the officers' authority.  We note that there was no evidence that the search of Naeole's home presented a risk to officer safety.  We hold that giving an occupant only

---

[8]     Our analysis need not take into account Naeole's testimony that she was actually awake at the time HPD breached her front door.  "[U]nder article 1, section 7 of our constitution, the focus is on whether the officer's actions are constitutionally reasonable."  Diaz, 100 Hawai'i at 230, 58 P.3d at 1277 (emphasis added); see Garcia, 77 Hawai'i at 467, 887 P.2d at 671 ("[T]he constitution mandates that police conduct in executing a search warrant must be reasonable." (emphasis added)).  Thus, "the facts known to the police are what count in judging reasonable waiting time[.]"  Banks, 540 U.S. at 39.  There is no evidence in the record that the police knew that any occupant of Naeole's home was awake and active when the first demand for entry was made.

twenty-five seconds to respond at such an early morning hour is unreasonable.[9]

In fact, there were no exigent circumstances that would have justified breaching the door earlier than would have otherwise been reasonable.  Exigent circumstances are those under which "the demands of the occasion reasonably call for an immediate police response."  State v. Lloyd, 61 Haw. 505, 512, 606 P.2d 913, 918 (1980).  Such circumstances exist where there is an imminent threat of harm to a person, where there is a danger of serious property damage, where a suspect is likely to escape, or where evidence is likely to be removed or destroyed.  Id.  "Since drugs are by their nature easily destroyed or secreted," exigent circumstances in cases involving searches for drugs "exist when the facts show that the occupants of the suspected locale are aware of the police presence and are taking steps which the police realistically fear may lead to destruction of the contraband."  State v. Davenport, 55 Haw. 90, 99, 516 P.2d 65, 71-72 (1973); see Lloyd, 61 Haw. at 512-13, 606 P.2d at 918-19 (sounds of "scurrying" and "crashing" within the house that might have indicated that a suspect was fleeing or

---

[9]    Our opinion should not be construed to express any position as to whether a time period greater or less than 25 seconds at a later time of the day or based on different circumstances would be a reasonable amount of time to respond to a knock-and-announce procedure, as what constitutes a reasonable period of time must be determined by the circumstances of each case.

that evidence was being removed or destroyed constituted exigent circumstances); cf. Quesnel, 79 Hawai'i at 191, 900 P.2d at 188 ("The State did not submit any evidence that the police, after knocking and announcing, heard frantic movement or flushing toilets or other signals that the occupants were attempting to destroy or hide evidence."). However, the mere fact that drugs are involved in a case, and that drugs are generally easy to remove, hide, or destroy, does not introduce exigent circumstances into all drug-related cases. State v. Dorson, 62 Haw. 377, 385, 615 P.2d 740, 746 (1980). In this case, although the search was for evidence of drug offenses, there were no exigent circumstances, and thus, the occupants of Naeole's home were entitled to a reasonable opportunity to respond.

## IV. CONCLUSION

For the foregoing reasons, the ICA's memorandum opinion and judgment on appeal are vacated, the circuit court's order granting Naeole's motion to suppress is affirmed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

Phyllis J. Hironaka            /s/ Mark E. Recktenwald
for Petitioner
                               /s/ Paula A. Nakayama
Brian R. Vincent
for Respondent                 /s/ Sabrina S. McKenna

                               /s/ Richard W. Pollack

                               /s/ Michael D. Wilson

